UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

JULIE BRIERLEY,

                        Plaintiff            DECISION AND ORDER

-vs-
                                                     1:18-CV-00708 CJS

ANDREW M. SAUL,
Commissioner of Social Security,

                        Defendant.
_____

APPEARANCES

For the Plaintiff:            Dennis A. Clary
                                  755 Center Street
                                  Post Office Box 1044
                                  Lewiston, New York 14092

For the Defendant:          Emily M. Fishman
                                  Social Security Administration
                                  Office of General Counsel
                                  26 Federal Plaza, Room 3904
                                  New York, New York 10278

                                  Blakely Pryor
                                  Francis D. Tankard
                                  Social Security Administration
                                  Office of General Counsel
                                  601 E. 12th Street, Room 965
                                  Kansas City, Missouri 64106

INTRODUCTION

This is an action brought pursuant to 42 U.S.C. § 405(g) to review the final determination of the Commissioner of Social Security ("Commissioner" or "Defendant"), which denied the application of Julie Brierley for Supplemental Security Income ("SSI")

benefits. Now before the Court is Plaintiff's motion (Docket No. [#12]) for judgment on the pleadings and Defendant's cross-motion [#16] for the same relief. For the reasons discussed below, Plaintiff's application is denied, Defendant's application is granted, and this action is dismissed.

FACTUAL BACKGROUND

The reader is presumed to be familiar with the facts and procedural history of this action. The Court will summarize the record only as necessary for purposes of this Decision and Order.

On January 13, 2015, Plaintiff filed for SSI benefits, claiming to be disabled due to a combination of physical and mental impairments. After her claim was denied initially, a hearing was conducted before an Administrative Law Judge ("ALJ") which began on May 18, 2017 and concluded on June 6, 2017.

At the time of the hearing, Plaintiff was forty-six years of age and had no past relevant work.[1]

The record contains conflicting information concerning Plaintiff's education and training. When Plaintiff applied for SSI benefits she indicated that her "highest grade of school completed was "8th grade."[2] Similarly, at the hearing Plaintiff testified that she quit school when she was sixteen, while still in eighth grade, and she did not correct the

---

[1] Transcript at p. 24. While not relevant to the Court's decision, the medical record indicates that in addition to the particular jobs that Plaintiff listed when she applied for benefits, most of which did not last long, she has worked at other jobs throughout her adult life. *See*, Transcript at p. 585 ("Her job history is quite spotty, she moves from job to job for about 1 year or so. [sic] Basically her more regular job was cleaning houses since age 26. She also took care of an older woman who die and now her [the deceased woman's] son. She said that 'I am a jack of all trades, master of none.'").
[2] Transcript at p. 246.

2

ALJ when the ALJ remarked that Plaintiff had only an eighth-grade education.[3] Moreover, Plaintiff's attorney has indicated to this Court that Plaintiff "has an eighth grade education [and] no GED."[4] However, Plaintiff reportedly told her mental health counselor that she had obtained her GED. (Transcript at p. 585) ("She did get a GED at age 18 years old. She said she that she had to take it [(the GED exam)] two times but added, "I am not a quitter."). Plaintiff also told a consultative examiner that she had earned her GED.[5] Further, when Plaintiff applied for SSI benefits she indicated that she had not "completed any type of specialized job training, trade or vocational school."[6] However, elsewhere in the record Plaintiff indicates that she completed vocational training as a beautician and that she used to be a "licensed hair dresser" until she lost her license for failing to pay the license fee.[7]

At the hearing, the ALJ asked the Vocational Expert ("VE") to consider a hypothetical claimant who, among other things, could work at the light exertional level with some postural limitations, and was "limited to simple, routine tasks not at a production rate pace."[8] The VE identified several unskilled jobs which such a claimant could perform. The VE stated, though, that the hypothetical claimant could not be off task more than fifteen percent of the time.[9] Then, the following exchange occurred on

---

[3] Transcript at p. 44; *see also*, Transcript at p. 70 (ALJ referred to Plaintiff as having only an "eight grade education," which Plaintiff did not dispute.)
[4] Docket No. [#12-1] at p. 2; *see also*, Transcript at p. 304 (Counsel's pre-hearing brief: "Ms. Brieley has an eighth grade education.").
[5] Transcript at p. 348.
[6] Transcript at p. 246.
[7] Transcript at p. 65; *see also, id.* at p. 585 ("She did finish beauty school[.]").
[8] Transcript at p. 70-73.
[9] Transcript at 73.

3

the record:

> ATTORNEY: If an individual – the same hypothetical – were to have occasional lapses in focus – being unable to maintain focus on what they were doing as opposed to being on a tangent or elsewhere – would that affect –
>
> ALJ: How is [a lapse in focus] different from [being] off task?  Help me to understand.
>
> ATTORNEY: It probably isn't.  I'm just being more specific.
>
> ALJ: Okay.
>
> VE: No, that would be evaluated as off task.
>
> ATTORNEY: Okay.  And so your answers to the judge's previous hypothetical would be the same.
>
> VE: Correct.

Transcript at p. 75.

On August 3, 2017, the ALJ issued a Decision finding that Plaintiff was not disabled at any relevant time.  Following the familiar five-step sequential analysis used to evaluate Social Security disability claims,[10] the ALJ made the following findings at the first three steps: 1) Plaintiff had not engaged in substantial gainful activity since her application date, January 15, 2015; 2) Plaintiff had severe impairments consisting of disorders of the back and neck, anxiety disorder and bipolar disorder; and 3) Plaintiff's

---

[10] *See, Bowen v. City of New York*, 476 U.S. 467, 470, 106 S. Ct. 2022, 2025, 90 L. Ed. 2d 462 (1986) ("Pursuant to statutory authority, the Secretary of Health and Human Services has adopted complex regulations governing eligibility for SSD and SSI payments. 20 CFR pt. 404, subpart P (1985) (SSD); 20 CFR pt. 404, pt. 416, subpart I (1985) (SSI). The regulations for both programs are essentially the same and establish a five-step "sequential evaluation" process.").

impairments, singly and in combination, did not meet or medically equal a listed impairment.

When evaluating Plaintiff's mental impairments at step three the ALJ found, with regard to the "paragraph B" criteria, that Plaintiff had "moderate limitations," as opposed to either "marked limitations" or "extreme limitations," in the areas of "understanding, remembering or applying information," "interacting with others," and "concentrating, persisting or maintaining pace."[11]

Prior to reaching step four of the sequential analysis, the ALJ made the following residual functional capacity ("RFC") determination:

> [C]laimant has the [RFC] to perform light work as defined in 20 CFR 416.967(b) except she can only occasionally reach overhead with the right arm, handle finger or feel bilaterally, or repetitively bend, twist or kneel. She can have occasional interaction with supervisors, coworkers, and the public. She is limited to simple, routine tasks not at a production rate pace.

(Transcript at 19). In explaining this finding, the ALJ devoted five pages of her decision to a review the various evidence in the record. With regard to Plaintiff's mental impairments, the ALJ noted that Plaintiff claimed to have difficulty concentrating, anxiety and racing thoughts, but that such complaints were not entirely consistent with the record.[12] For example, the ALJ stated that at "her treatment visits for physical related complaints, the claimant was often observed to be alert and oriented with a normal

---

[11] Transcript at p. 18.
[12] Transcript at p. 20. The ALJ also noted that Plaintiff, who has a history of polysubstance abuse, gave conflicting statements regarding her current marijuana usage. Transcript at p. 22. Specifically, contrary to the statements Plaintiff reportedly made to two consultative examiners in March 2015, *id.* at 349,354 (which conflict with each other), she told her mental health therapist at around that same time that she had been using marijuana on a daily basis. *Id.* at pp. 608-609.

5

mood and affect and normal speech," and that "[i]n 2016, the claimant further reported that her anxiety was well controlled with medication."[13] The ALJ further stated:

> At a psychiatric consultative examination, mental status examination of the claimant was also generally unremarkable[.] [A]side from a mildly pressured affect and speech, the claimant was otherwise observed to be cooperative with appropriate eye contact, adequate hygiene and grooming, clear speech, goal directed thoughts, clear sensorium, full orientation, *intact attention and concentration*, and intact memory.

Transcript at p. 22 (emphasis added).

Continuing with the sequential evaluation, the ALJ found at step four that Plaintiff had no past relevant work. And finally, at step five, the ALJ found that considering Plaintiff's age, education, work experience and RFC, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform.[14]

Plaintiff appealed the ALJ's decision, but on June 4, 2018, the Appeals Council denied Plaintiff's request for review.

On June 25, 2018, Plaintiff commenced this action, and on April 3, 2019, she filed the subject motion [#12] for judgment on the pleadings. Plaintiff contends that the Commissioner's decision should be reversed for essentially two reasons, both relating to her mental impairments.[15]

First, Plaintiff contends that "[a]lthough [the ALJ] specifically found that Plaintiff would have moderate limitations in concentration, persistence and pace, her limiting Plaintiff to simple, routine tasks not at a production rate pace with occasional interaction

---

[13] Transcript at p. 22.
[14] Transcript at pp. 24-25.
[15] Plaintiff does not dispute the ALJ's findings concerning her physical abilities.

with supervisors, coworkers and the public, did not adequately account for those limitations."[16] In this regard, Plaintiff maintains that a finding of "moderate limitations" in the areas of concentration, persistence and pace "is consistent with at least *occasional* inability to maintain focus," meaning up to one-third of the day. (emphasis added). Plaintiff further asserts that the VE testified that someone who would be off task "occasionally" would be unable to work competitively.[17] Consequently, Plaintiff asserts that the ALJ's RFC determination necessarily requires a finding of disability.

Second, Plaintiff contends that the ALJ erred, and/or that the ALJ's decision is unsupported by substantial evidence, insofar as the ALJ relied on certain evidence to make her RFC determination:

> [T]he ALJ relied upon the one-time consultative examination performed by Dr. Ransom in 2015, more than two years prior to the hearing, along with the fact that Plaintiff could cook, clean, do laundry, shop and manage funds as indicative of her RFC finding. However, it has been held that facts such as these are insufficient to support a conclusion that a claimant is able to work on an extended, regular basis. While the ALJ made much of the fact that Plaintiff's described daily activities were, in her opinion, inconsistent with her disabling symptoms, there was no indication how well she was able to perform her daily activities and Plaintiff testified that she was not able to do these things, particularly with regard to socialization and taking care of her grandchildren, on a regular basis. Additionally, the ALJ indicated that because Plaintiff went to Florida twice between 2011 and the hearing, [but] Plaintiff testified that she stayed in her motel mostly and kept to herself other than swimming at the pool, and she did not associate with others.

---

[16] Pl. Memo of Law [#12-1] at p. 5.
[17] As a supplement to this argument, Plaintiff maintains that her testimony at the hearing, "while not strictly medical evidence," demonstrates her "great difficulty in staying on point and keeping focused." Pl. Memo of Law [#12-1] at p. 6.

7

Pl. Memo of Law [#12-1] at p. 6 (case citations omitted). In other words, Plaintiff maintains that neither Dr. Ransom's report, which was stale, nor the evidence of her daily activities, which the ALJ exaggerated, are indicative of an ability to work on a sustained basis.[18]

STANDARDS OF LAW

42 U.S.C. § 405(g) states, in relevant part, that "[t]he findings of the Commissioner of Social security as to any fact, if supported by substantial evidence, shall be conclusive." The issue to be determined by this Court is whether the Commissioner's conclusions "are supported by substantial evidence in the record as a whole or are based on an erroneous legal standard." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998). Substantial evidence is defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (citation omitted).

> The substantial evidence standard is a very deferential standard of review—even more so than the 'clearly erroneous' standard, and the Commissioner's findings of fact must be upheld unless a reasonable factfinder would have to conclude otherwise." *Brault v. Social Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (per curiam) (emphasis in original). "An ALJ is not required to discuss every piece of evidence submitted, and the failure to cite specific evidence does not indicate that such evidence was not considered. *Id.*

*Banyai v. Berryhill*, 767 F. App'x 176, 177 (2d Cir. 2019), as amended (Apr. 30, 2019) (internal quotation marks omitted).

---

[18] Pl. Memo of Law [#12-1] at pp. 5-6.

In applying this standard, a court is not permitted to re-weigh the evidence. *See, Krull v. Colvin*, 669 F. App'x 31, 32 (2d Cir. 2016) ("Krull's disagreement is with the ALJ's weighing of the evidence, but the deferential standard of review prevents us from reweighing it."); *see also, Riordan v. Barnhart*, No. 06 CIV 4773 AKH, 2007 WL 1406649, at *4 (S.D.N.Y. May 8, 2007) ("The court does not engage in a *de novo* determination of whether or not the claimant is disabled, but instead determines whether correct legal standards were applied and whether substantial evidence supports the decision of the Commissioner.") (citations omitted).

<u>The ALJ's finding that Plaintiff had moderate limitations in concentration, persistence and pace did not require a finding of disability</u>

As mentioned earlier, Plaintiff's primary argument in this action is based on the assertion that "ALJ Jones specifically found that Plaintiff would have moderate limitations in concentration, persistence and pace." From this, Plaintiff reasons that under the Commissioner's regulations, a "moderate limitation" is synonymous with an "occasional inability," which means an inability up to one-third of a workday. Plaintiff further points out that the VE testified that a claimant who would be off task more than fifteen percent of the workday was un-employable. Consequently, Plaintiff maintains, the ALJ's own findings require a conclusion of disability. The Court disagrees.

Preliminarily, the Court observes that Plaintiff's description of the VE's testimony is not entirely accurate. Plaintiff states that "the question put to the VE by counsel regarding an individual who would have occasional limitations in maintaining focus elicited an answer that such an individual would be unable to maintain competitive

9

employment."[19]   Actually, though, as shown earlier, the VE did not testify that a claimant with "occasional limitations in maintaining focus" is un-employable.   Rather, in response to Counsel's question about a claimant who would have occasional lapses in focus, the VE stated that a lapse in focus is the same as being off task, and that his answer to counsel's question would be the same as his previous answer to the ALJ.   In other words, the VE's response to both questions was merely that a claimant could not be off task more than fifteen percent of the time.

In any event, Plaintiff's argument is based on the assertion that a moderate limitation in concentration, persistence or pace is "consistent with at least occasional inability to maintain focus," with the term "occasional" meaning "up to one third of the day."[20]   At least one other district court in this Circuit has rejected this "moderate equals occasional" argument:

> Plaintiff concludes, without support, that the terms "moderate" and "occasional" are synonymous and because occasional is defined by the Social Security Administration as "up to one-third" of the day, then moderate must as well. *See* SSR 96-9P (S.S.A. July 2, 1996) (occasionally means occurring from very little up to one-third of the time, and would generally total no more than about 2 hours of an 8-hour workday). Plaintiff cites no legal authority to support his argument. Plaintiff's argument, while interesting, is based on speculation.

*Lowry v. Comm'r of Soc. Sec.*, No. 115CV1553GTSWBC, 2017 WL 1290685, at *4 (N.D.N.Y. Mar. 16, 2017), report and recommendation adopted, No. 115 CV 1553GTSWBC, 2017 WL 1291760 (N.D.N.Y. Apr. 6, 2017).   However, courts have

---

[19] Pl. Memo [#12-1] at p. 5.
[20] Pl. Memo [#12-1] at p. 5.

endorsed the different-but-related idea that a moderate limitation on a claimant's ability to perform a certain work-related activity may be accounted for by limiting the claimant to performing that activity only occasionally. *See, e.g., Frost v. Colvin*, No. 1:14-CV-00965 (MAT), 2017 WL 2618099, at *2 (W.D.N.Y. June 16, 2017) ("Here, the ALJ's RFC determination limited plaintiff to only occasional interaction with the public, thereby adequately accounting for her moderate limitations in social functioning.").

In this action, the ALJ did not expressly define her use of the term "moderate," and "[t]he Social Security regulations do not provide a standard definition of the term. *Phillip M. v. Comm'r of Soc. Sec.*, No. 19-CV-01552-TSH, 2019 WL 6117476, at *13 (N.D. Cal. Nov. 18, 2019); *see also, Hurley v. Colvin*, No. 6:17-CV-06031(MAT), 2018 WL 1250020, at *3 (W.D.N.Y. Mar. 12, 2018) ("The Commissioner's regulations do not define the term 'moderate.'").

It is evident, though, that the ALJ did not intend her use of the term "moderate" to mean "up to one-third of the day." In this regard, the ALJ was aware, from the VE's testimony, that Plaintiff would not be able to perform any of the jobs identified by the VE if she would be off task more than fifteen percent of the time. Knowing this, the ALJ indicated that Plaintiff could perform those jobs, in line with the RFC determination. Therefore, the ALJ necessarily found that Plaintiff would be off task less than fifteen percent of the time. This is consistent with the ALJ's discussion of the evidence, and in particular with her reference to the consultative examiner's finding that Plaintiff had "intact attention and concentration." The ALJ never indicated that Plaintiff would be off task "occasionally." Plaintiff's contention that the ALJ used the term "moderate

11

limitation" to mean a limitation that would render the claimant unable to perform that function up to one-third of the day is speculative and contrary to the ALJ's decision.

Further, Plaintiff's argument on this point suggests that any claimant with a "moderate" limitation in concentration, persistence or pace is necessarily disabled, which is contrary to the law of this Circuit. *See, e.g., Lowry v. Comm'r of Soc.* Sec., 2017 WL 1290685, at *4 ("The Second Circuit has held that a moderate limitation in the area of concentration, persistence, or pace would not necessarily preclude the ability to perform unskilled work.") (collecting cases), report and recommendation adopted, No. 115CV1553GTSWBC, 2017 WL 1291760 (N.D.N.Y. Apr. 6, 2017).

As for Plaintiff's contention that remand is required because limiting her to "simple, routine tasks" in the RFC "did not adequately account for" her moderate limitations in concentration, persistence and pace, the Court again disagrees. *See, e.g., Broadbent v. Saul*, No. 3:18-CV-02127(WIG), 2019 WL 4295328, at *5 (D. Conn. Sept. 11, 2019) ("The RFC limits Plaintiff to simple routine tasks.   This sufficiently accounts for Plaintiff's difficulties with concentration, persistence, and pace, as courts routinely find that a claimant who has moderate limitations in memory and concentration can perform simple routine, tasks.") (collecting cases).

At most, the ALJ's failure, when questioning the VE, to specify Plaintiff's non-exertional impairments, and her decision to instead indicate that the hypothetical claimant was limited to "simple, routine tasks not at a production rate pace," was harmless error. *See, McIntyre v. Colvin*, 758 F.3d 146, 152 (2d Cir. 2014) ("[A]n ALJ's hypothetical should explicitly incorporate any limitations in concentration, persistence,

12

and pace. We hold, however, that an ALJ's failure to incorporate non-exertional limitations in a hypothetical (that is otherwise supported by evidence in the record) is harmless error if (1) medical evidence demonstrates that a claimant can engage in simple, routine tasks or unskilled work despite limitations in concentration, persistence, and pace, and the challenged hypothetical is limited to include only unskilled work; or (2) the hypothetical otherwise implicitly accounted for a claimant's limitations in concentration, persistence, and pace.") (citations and internal quotation marks omitted).

### The ALJ's RFC determination was supported by substantial evidence

*Dr. Ransom's Consultative Exam Report*

Plaintiff maintains that the ALJ erred by relying on a consultative report written by Dr. Ransom two years prior to the hearing. The Court disagrees. A consultative report may be stale where the claimant's condition has changed in the interim between the consultative exam and the hearing:

> An ALJ may not rely on medical source opinions that are conclusory, stale, and based on an incomplete medical record" as substantial evidence to support his RFC findings. A medical opinion may be stale if it does not account for a plaintiff's deteriorating condition. … The Court concludes that the ALJ erred by relying, almost exclusively, on medical opinions rendered three and four years before the hearing when subsequent treatment records indicate that plaintiff's condition exacerbated over time. The opinions are stale because they were rendered prior to plaintiff's 2013 spinal surgery and 2014 fall. Further, they fail to account for the years of subsequent medical records and treatment notes which detail plaintiff's significant pain and other limitations.

*Jeffords v. Comm'r of Soc. Sec.*, No. 17-CV-1085-MJR, 2019 WL 1723517, at *6-7 (W.D.N.Y. Apr. 18, 2019) (citations omitted). However, a report does not become stale

13

merely by the passage of time, where the claimant's condition has not changed. *See, Whitehurst v. Berryhill*, No. 1:16-CV-01005-MAT, 2018 WL 3868721, at *4 (W.D.N.Y. Aug. 14, 2018) ("The mere passage of time does not render an opinion stale.").

In this action, Plaintiff objects to the ALJ's reliance on Dr. Ransom's report because Ransom's examination was performed "more than two years prior to the hearing."[21] Plaintiff, though, does not allege that her condition worsened since the consultative exam. Accordingly, Plaintiff's objection on this point lacks merit.

*Evidence of Plaintiff's Activities of Daily Living*

Plaintiff next contends that the evidence of her activities of daily living does not provide substantial evidence that she can work on a sustained basis, since the ALJ never evaluated "how well she was able to perform her daily activities [even though Plaintiff] testified that she was not able to do these things . . . on a regular basis."[22]

Plaintiff also contends that the ALJ should not have considered that she twice went on vacations to Florida by herself during the relevant period. According to Plaintiff, it was improper for the ALJ to consider those vacations, since she testified that on those vacations "she stayed in her motel mostly and kept to herself other than swimming at the pool and she did not associate with others."[23]

---

[21] Pl. Memo [#12-1] at p. 5.
[22] Pl. Memo [#12-1] at p. 6.
[23] As mentioned earlier Plaintiff contends that the ALJ failed to consider her limitations "particularly with regard to socialization," and ignored the fact that Plaintiff claimed that on her vacations to Florida she "mostly and kept to herself" and "did not associate with others." However, the Court notes that the mental health treatment notes are replete with references to Plaintiff having an active social life. *See, e.g.*, Transcript at p. 627 ("Able to take good care of herself. Active socially.").

As a preliminary matter, to the extent Plaintiff may be suggesting that an ALJ cannot consider a claimant's activities of daily living she is clearly mistaken. *See, e.g., McMahon v. Colvin*, No. 13-CV-4181 JS, 2014 WL 3735910, at *8 (E.D.N.Y. July 29, 2014) ("Plaintiff argues that the ALJ improperly relied on Plaintiff's activities of daily living as evidence of Plaintiff's ability to engage in sedentary work on a sustained basis. However, under the regulations, Plaintiff's activities of daily living are a factor that the ALJ may properly consider. See 20 C.F.R. § 404.1529(c)(3).").

Plaintiff is also incorrect insofar as she implies that the ALJ was required to accept her testimony about her activities of daily living at face value. Rather, the ALJ was required to evaluate Plaintiff's credibility. The ALJ did so and found that Plaintiff was not entirely credible. The ALJ's finding on that point is supported by substantial evidence.

As for Plaintiff's remaining argument that her *particular* activities of daily living do not suggest that she is able to work full time, she cites two cases: *Rivera v. Berryhill*, No. 17 CIV. 7177 (RWS), 2019 WL 692162, at *13 (S.D.N.Y. Jan. 28, 2019) and *Bodden v. Colvin*, 2015 WL 8757129, at *12 (S.D.N.Y. Dec. 14, 2015). However, the Court finds that those cases are factually inapposite. For example, in *Bodden* the district court faulted the ALJ for considering *only* the claimant's activities of daily living, while failing to consider other factors under 20 C.F.R. § 416.929. *See, Bodden v. Colvin*, 2015 WL 8757129 at *12 ("In his evaluation of Bodden's credibility,the ALJ examined only Bodden's daily activities and failed to consider any of the other relevant factors as required by the Regulations[.]"). In the instant action, the ALJ expressly

15

indicated that she considered all of the evidence consistent with 20 C.F.R. § 416.929.[24]

Plaintiff nevertheless contends that the ALJ failed to consider "how well" she was able to perform her daily activities, thereby suggesting that the ALJ overlooked evidence that she has great difficulty performing her daily activities. The Court again disagrees, and finds that the ALJ accurately summarized the evidence.[25] To the extent Plaintiff testified to having difficulty performing certain activities, her statements were typically vague, not particularly indicative of disability, and/or not consistent with other evidence.[26] In sum, the Court finds that Plaintiff's argument on this point lacks merit.

## CONCLUSION

For the reasons discussed above, Plaintiff's motion for judgment on the pleadings [#12] is denied, Defendant's motion [#16] is granted, and this matter is dismissed. The Clerk of the Court is directed to enter judgment for Defendant and close this action.

So Ordered.

Dated: Rochester, New York
February 12, 2020

ENTER:

/s/ Charles J. Siragusa
CHARLES J. SIRAGUSA
United States District Judge

---

[24] Transcript at p. 19.
[25] Transcipt at p. 22.
[26] *See, e.g.*, Transcript at p. 50 (Plaintiff testified that she was able to do all household chores, but added, "I can't do it the way I used to do it."); *see also, id.* at p. 60 (Plaintiff stated that she was able to care for her three granddaughters (ages three, four and seven) on overnight visits and to transport the older child to school, but added that she was cutting back on such visits because it was getting to be "too much.").